UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| **MARK GOMEZ,** | ) | |
|         **Plaintiff,** | ) | |
| | ) | |
| v. | ) | **The Honorable Matthew F. Kennelly** |
| | ) | **Case No. 1:19-cv-04347-MFK** |
| **TAKEDA PHARMACEUTICAL** | ) | |
| **COMPANY LIMITED ET AL.** | ) | |
| | ) | |
|         **Defendants.** | ) | |

| | | |
|---|---|---|
| **PETER GUST KARIDIS** | ) | |
|         **Plaintiff,** | ) | |
| | ) | |
| v. | ) | **Case No. 1:19-cv-07060-VMK** |
| | ) | |
| **TAKEDA PHARMACEUTICALS** | ) | |
| **U.S.A. INC., ET AL.** | ) | |
|         **Defendants.** | ) | |

| | | |
|---|---|---|
| **CHRISTOPHER WALTERS** | ) | |
|         **Plaintiff,** | ) | |
| | ) | |
| v. | ) | **Case No. 1:19-cv-07651-JRB** |
| | ) | |
| **TAKEDA PHARMACEUTICALS** | ) | |
| **U.S.A. INC., ET AL.** | ) | |
|         **Defendants.** | ) | |

| | | |
|---|---|---|
| **SHELLY OWENS** | ) | |
|         **Plaintiff,** | ) | |
| | ) | |
| v. | ) | **Case No. 1:19-cv-07716-CPK** |
| | ) | |
| **TAKEDA PHARMACEUTICALS** | ) | |
| **U.S.A. INC., ET AL.** | ) | |
|         **Defendants.** | ) | |

1

| | | |
|---|---|---|
| **SIDNEY J. LAURENT JR.** | ) | |
|         **Plaintiff,** | ) | |
| | ) | |
| v. | ) | **Case No. 1:19-cv-08129-JRB** |
| | ) | |
| **TAKEDA PHARMACEUTICALS** | ) | |
| **AMERICA, INC., ET AL.** | ) | |
|         **Defendants.** | ) | |

| | | |
|---|---|---|
| **JIMMIE GREEN** | ) | |
|         **Plaintiff,** | ) | |
| | ) | |
| v. | ) | **Case No. 1:19-cv-08127-MEA** |
| | ) | |
| **TAKEDA PHARMACEUTICALS** | ) | |
| **AMERICA, INC., ET AL.** | ) | |
|        **Defendants.** | ) | |

| | | |
|---|---|---|
| **WAYNE POTTS** | ) | |
|        **Plaintiff,** | ) | |
| | ) | |
| v. | ) | **Case No. 1:19-cv-08171-RWG** |
| | ) | |
| **TAKEDA PHARMACEUTICAL** | ) | |
| **COMPANY LIMITED ET AL.** | ) | |
| | ) | |
|        **Defendants.** | ) | |

| | | |
|---|---|---|
| **MELDON LEE** | ) | |
|        **Plaintiff,** | ) | |
| | ) | |
| v. | ) | **Case No. 1:19-cv-08169-JZL** |
| | ) | |
| **TAKEDA PHARMACEUTICAL** | ) | |
| **COMPANY LIMITED ET AL.** | ) | |
| | ) | |
|        **Defendants.** | ) | |

| | |
|---|---|
| **GISELE PERNELL** ) | |
|     **Plaintiff,** ) | |
| ) | |
| **v.** ) | **Case No. 1:20-cv-00033-EEB** |
| ) | |
| **TAKEDA PHARMACEUTICALS** ) | |
| **U.S.A. INC., ET AL.** ) | |
|     **Defendants.** ) | |

**ORDER REGARDING THE PROTOCOL FOR PRODUCTION OF ELECTRONICALLY STORED INFORMATION AND HARDCOPY DOCUMENTS**

  Plaintiff and Defendants before this Court (sometimes referred to hereinafter as "Plaintiff" and/or "Defendants," or collectively, the "Parties") hereby stipulate and agree, through their respective attorneys of record, that production of documents, including electronically stored information ("ESI") and paper ("hardcopy") documents, shall be in accordance with the following protocol.

### INTRODUCTION

  This protocol has the objective to facilitate the just, speedy and inexpensive completion of discovery of ESI and hardcopy documents and to promote the early resolution of disputes regarding discovery without Court intervention.

### A. GENERAL AGREEMENTS

1. **No Limitations of Rights.**

  Nothing in this protocol shall limit a Party's right to seek or object to discovery pursuant to applicable rules, statutes, regulations, or Court orders, or to object to the authenticity or admissibility of any hardcopy document or ESI produced in accordance with this protocol.

2. **ESI Preservation.**

  The Parties represent that they have taken reasonable and proportional steps to preserve reasonably accessible documents and ESI that are relevant to the claims and defenses in the Litigation, including implementation of a litigation hold.

3. **Proportionality.**

  (a) <u>Reasonable Discovery Limits</u>. The Parties agree that a standard of proportionality shall apply to discovery in this action. Consistent with that proportionality standard, the Parties agree to cooperate in identifying appropriate limits on discovery, including limits on discoverable

3

data sources and on the permissible scope of requests for production. Requests for production of ESI shall be reasonably targeted, clear and as specific as possible.

(b) <u>Discovery Costs</u>. Consistent with a proportionality standard, the party producing documents and ESI ("Producing Party") reserves the right to seek relief from the Court (e.g., a cost-shifting award). The Party requesting discovery ("Receiving Party") agrees to bear the costs associated with its compliance with the terms of this protocol and associated with the receipt and review of ESI produced under this protocol.

(c) <u>Types of ESI That Need Not Be Preserved or Collected</u>. Parties need not preserve or collect ESI from the following sources absent good cause and substantial need shown by the requesting Party:

> (i) ESI deleted as a result of the routine, good-faith operation of an ESI system;
> (ii) Backup data files maintained in the normal course of business for purposes of disaster recovery, including without limitation backup tapes, disks, SAN and other forms of media;
> (iii) Unallocated data, slack space, deleted data, file fragments or other data accessible only by use of computer forensics;
> (iv) Random access memory, temporary files or other ephemeral data;
> (v) Online access data such as (without limitation) temporary internet files, history files, cache files and cookies;
> (vi) Data in metadata fields frequently updated automatically as part of the usual operation of a software application, such as last-opened or last-printed dates;
> (vii) Telephone voice messages unless they are transcribed or otherwise retained in the ordinary course of business;
> (viii) Text and instant messages not retained in the ordinary course of business;
> (ix) Operating system files, executable files, network, server, software application or system logs;
> (x) Files on the NIST list; and
> (xi) Legacy data from systems or software applications no longer in use when such data cannot be read or interpreted by systems or software applications currently in use.

(d) <u>Backup Data</u>. No Party shall be required to modify or suspend procedures, including rotation of backup media, used in the normal course of business to back up data and systems for disaster recovery or any other purposes. Backup media, data preserved on Postini, disaster-recovery media and permanent retention media shall be considered to be not reasonably accessible due to undue burden and/or cost. If a Party decides to voluntarily produce from one or more such sources, that Party will establish a reasonable approach under which such discovery will occur.

4. **Discovery Concerning Collection, Processing, Review, and Similar Discovery Matters.**

Discovery concerning another Party's efforts to respond to discovery can contribute to unnecessary expense and delay and may inappropriately implicate work product and attorney-client privileged matter. If a dispute arises concerning a Party's collection efforts or related matters, the Parties or their counsel must meet and confer and fully explain their reasons for believing that additional efforts are, or are not, reasonable and proportionate. In particular, before initiating such discovery, a Party shall confer with the other Party concerning the specific need for such discovery, including its relevance to claims and defenses.

5. **On-Site Inspections of ESI.**

On-site inspections of ESI shall be permitted only upon a showing by the requesting Party of good cause and specific need or upon agreement of the Parties.

6. **No Designation of Discovery Requests.**

Production of hardcopy documents in the usual course of business, as well as production of ESI in the reasonably usable form set out in this Order, including Attachment A, need not include any reference to the discovery requests to which a document or ESI may be responsive.

7. **Privilege Claims.**

(a) For ESI or hardcopy documents withheld from production pursuant to a claim of attorney-client privilege, work product protection or other applicable privilege or immunity ("privileged documents"), the Producing Party shall provide one or more privilege logs in Excel or a similar electronic form that allows text searching and organization of data. The privilege log shall be provided within 75 days following the production from which the privileged documents are withheld.

(b) A party's privilege log will contain objective metadata (to the extent it is reasonably available and does not reflect privileged or protected information) and the privilege claimed. The objective metadata fields include: Beg Bates, End Bates, Type of Document, Author, From, To, CC, BCC, Date, Subject, File Name, Document Title, File Extension. Legal personnel shall be identified as such by adding an asterisk after their names in the privilege log. Should the Receiving Party, in good faith, have reason to believe a particular entry on the metadata-generated log is responsive and does not reflect privileged discoverable information, the Receiving Party may request that the Producing Party generate a description for that privilege log entry and the Producing Party shall respond reasonably to such requests.

(c) For a chain of privileged emails, the Producing Party need include only one entry on the privilege log for the privileged communications in the email chain and need not log each email contained in the chain separately. The privilege log entry for the email chain needs to provide in the applicable privilege log fields (1) the Bates number for the entire email chain, and (2) the author, recipient(s) and copyee(s) of only the last-in-time email.

(d) The Producing Party is not required to include in its privilege logs (1) privileged communications with outside counsel whose representation is relevant to the subject matter of this lawsuit; (2) privileged documents dated after September 28, 2018, the date the complaint was filed in *Utley v. Takeda,* No. 2018L010549, Circuit Court of Cook County, Illinois; or (3) redactions

from produced documents, provided the reason for the redaction appears on the redaction label and the Producing Party includes a "Redaction Type" field in the production .dat file (e.g., Privileged, Work Product; Protected Personal Information).

(e) Procedures for challenges to attorney-client privilege, work-product, and other applicable privilege designations, along with additional provisions related to such privileges and protections, are outlined in the Stipulated Protective Order of Confidentiality.

8. **Responsiveness, Privilege of Entire Documents, Family Members.**

The fact that one document in a family is produced does not require that all documents in the family be produced. Documents within the same family as produced documents may be withheld as privileged or non-responsive. Non-responsive family members ("NRFMs") will be limited to attachments that are solely related to another drug or compound. Each NRFM will be identified by a slipsheet, and discoverable metadata for each NRFM will be provided. Parent emails will not be withheld as NRFMs.

### B. ELECTRONICALLY STORED INFORMATION

1. **ESI, Generally.**

(a) Production in Reasonably Usable Form. The Parties shall produce ESI in reasonably usable form. Except as stated in Paragraphs B.2 and B.3 below or as agreed in writing hereafter by the Parties, such reasonably usable form shall be the single-page, *.tif-image format with extracted or optical character recognition ("OCR") text and associated available metadata set out in Attachment A, which is incorporated in full in this Order.

(b) Redactions. The Producing Party may redact from any *.tif image, metadata field or native file material that is protected from disclosure by applicable privilege or immunity; that is governed by applicable privacy law or regulation; that contains non-responsive information; or that is allowed to be redacted under the Protective Order entered in these proceedings. In preparing document families for production, the Producing Party may redact entire family members that are wholly non-responsive or may withhold such family members from production (rather than producing wholly-redacted documents) and produce slipsheets in their place. Each redaction shall be indicated clearly on the redacted document or slipsheet.

(c) Color Documents. If the Receiving Party, makes a reasonable request seeking production in color of specifically identified ESI produced originally in black-and-white, *.tif-image form, the Producing Party shall respond reasonably.

2. **Electronic Spreadsheets, Presentations, Desktop Databases, and Multimedia Files.**

Electronic spreadsheets (e.g., Excel), electronic presentations (e.g., PowerPoint), desktop databases (e.g., Access) and audio/video multimedia files may be produced in native format. Additionally, the Producing Party reserves the right to produce other files in native format. If a document to be produced in native format is authorized to be redacted in accordance with Paragraph B.1.b above, the Producing Party either shall produce the redacted file in the reasonably

usable form set out in in Paragraph B.1 and Attachment A or shall produce the redacted copy in native format.

3. **Enterprise Databases and Database Management Systems.**

In instances in which discoverable ESI in an enterprise database or database management system (e.g., Oracle, SQL server, DB2) can be produced in an already existing and reasonably available report, the Producing Party shall collect and produce, in the reasonably usable *.tif-image form described in Paragraph B.1 and Attachment A, the discoverable material in that report format. If an existing report form is not reasonably available, the Producing Party shall export from the original database discoverable information in a format compatible with Microsoft Excel or Microsoft Access, and the information shall be produced in that native format.

4. **Additional Procedures for Native Format Files.**

Any Party seeking to use, in any proceeding in this action, files produced in native format shall do so subject to the following:

(a) The original Bates number and confidentiality designation, if any, shall be stamped on each page of any *.tif image or hardcopy document representing the original native-format file.

(b) Use of a file in native format, or use of a *.tif image or hardcopy document representing the original native-format file, shall constitute a representation that the file being used is an accurate and complete depiction of the original native-format file.

5. **Use of Search Terms and Techniques.**

(a) To contain costs in the identification of relevant ESI for review and production, the Parties may meet and confer to discuss the use of reasonable search terms, file types, and date ranges or the use of advanced search and retrieval technologies, including predictive coding or other technology-assisted review. The Producing Party shall retain the sole right and responsibility to manage and control searches and review of its data files.

(b) The fact that any electronic file has been identified in agreed-upon searches shall not prevent any Party from withholding such file from production on the grounds that the file is not responsive; that it is protected from disclosure by applicable privilege or immunity; that it is governed by applicable privacy law or regulation; that it contains non-responsive information; or that the Protective Order or other Court Order entered in this action allows the file to be withheld.

(c) Nothing in this section shall limit a Party's right to reasonably seek agreement from the other Parties or a ruling from the Court to modify previously agreed-upon search terms or procedures for advanced search and retrieval technologies.

6. **Email Threads.**

(a) Email threads are email communications that contain prior-in-time or lesser-included emails that also may exist separately in the Party's electronic files. A most inclusive email thread is one that contains all of the prior-in-time or lesser-included emails, including attachments,

for that branch of the email thread. The Producing Party may remove from production the wholly-included, prior-in-time or lesser-included emails. Additionally, each Party is required to list on any privilege log only the most inclusive email thread.

(b) Following production of most inclusive email threads, and for good cause,' a Receiving Party may make reasonable requests for metadata associated with individual prior-in-time or lesser-included emails within specifically identified most inclusive email threads. The Producing Party shall respond reasonably to such requests.

7. **Avoidance of Duplicate Production.**

"Duplicate ESI" means files that are exact duplicates based on the files' MD5 or SHA-1 hash values. The Producing Party need produce only a single copy of responsive Duplicate ESI. A Producing Party may take reasonable steps to de-duplicate ESI globally (*i.e.*, both within a particular custodian's files and across all custodians). Entire document families may constitute Duplicate ESI. De-duplication shall not break apart families. When the same Duplicate ESI exists in the files of multiple custodians, those persons shall be listed in the CustodianAppendMulti field identified in Paragraph A.15.c of Attachment A.

8. **Replacement Files.**

Any documents that are replaced in later productions shall be clearly designated as such, by appending a "-R" to the production prefix and by a letter accompanying the production clearly designating such documents as replacements.

## C. DOCUMENTS THAT EXIST ONLY IN HARDCOPY FORM

A Party may produce documents that exist in the normal course of business only in hardcopy form either (a) in their original hardcopy form, or (b) scanned and produced in accordance with the procedures set out in Attachment A. The scanning of original hardcopy documents does not otherwise require that the scanned images be treated as ESL There is no requirement that a Producing Party objectively code documents to provide metadata fields not otherwise available.

FOR GOOD CAUSE SHOWN, IT IS SO ORDERED this 9th day of January 2020.

_____
Judge

By: */s/ Andrea Glinka Przybysz*
Andrea Glinka Przybysz
James Hemmings
TUCKER ELLIS LLP
233 S Wacker Dr., Suite 6950
Chicago, IL 60606
Phone: 312-624-6300
Firm ID: 59175
*ATTORNEYS FOR DEFENDANTS*


By: */s/ Stacy Hauer*
JOHNSON BECKER, PLLC
Stacy K. Hauer (MN#317093)
Timothy J. Becker (MN#256663)
444 Cedar Street, Suite 1800 St. Paul, MN 55101
Tel: (612) 436-1800
Fax: (612) 436-1801
tbecker@johnsonbecker.com
shauer@johnsonbecker.com

By: */s/ Pete Flowers*
MEYERS & FLOWERS, LLC
Peter J. Flowers (IL Bar #06210847
3 North Second Street, Suite 300
St. Charles, IL 60174
Tel: (630) 232-6333
Fax: (630) 845-8982
pjf@meyers-flowers.com
*ATTORNEYS FOR PLAINTIFF*

9

## Attachment A

A.1.  <u>Image Files</u>. Files produced in *.tif image format will be single-page, black-and-white *.tif files at 300 DPI quality or better, Group IV compression. To the extent possible, original orientation will be maintained (i.e., portrait-to-portrait and landscape-to-landscape). Each *.tif file will be assigned a unique name matching the Bates number of the corresponding page. Such files will be grouped in folders of no more than 1,000 *.tif files each unless necessary to prevent a file from splitting across folders. Files will not be split across folders, and separate folders will not be created for each file.

(a)  Whenever possible, Bates numbers shall be endorsed onto each *.tif image at a location that does not obliterate, conceal or interfere with any information from the source document.

(b)  Whenever possible, confidentiality designations, if any, will be endorsed on *.tif images at a Location that does not obliterate, conceal or interfere with any information from the original file.

A.2.  <u>File Text</u>.  Full extracted text will be provided in the format of a single *.txt file for each file (*i.e.*, not one *.txt file per *.tif image), except:

(a)  If ESI contains text that has been redacted under assertion of privilege or other protection from disclosure, the redacted *.tif image will be OCR'd and file-level OCR text will be provided in lieu of extracted text.

(b)  If the document has no extracted text (*e.g.*, a non-searchable PDF file), the document will be OCR'd, and available file-level OCR text will be provided in lieu of extracted text.

Searchable text will be produced as file-level, multi-page UTF-8 text files with the text file named to match the beginning Bates number of the file. The full path of the text file must be provided in the *.dat data load file.

A.3.  <u>Word Processing Files</u>. Word processing files, including without limitation Microsoft Word files (*.doc and *.docx), will be produced in *.tif image format, with tracked changes and comments, if any, in such files.

A.4.  <u>Presentation Files</u>. If presentation files, including without limitation Microsoft PowerPoint files (*.ppt and *.pptx), are produced in *.tif image format due to redaction, such *.tif images will display comments, hidden slides, speakers' notes and similar data, if any, in such files.

A.5.  <u>Spreadsheet or Worksheet Files</u>. If spreadsheet files, including without limitation Microsoft Excel files (*.xls or *.xlsx), are produced in *.tif image format due to redaction, such *.tif images will display hidden rows, columns and worksheets, if any, in such files.

A.6.  <u>Parent-Child Relationships</u>. Parent-child relationships (*e.g.*, the associations between emails and their attachments) will be preserved. Email and other ESI attachments will be produced as independent files. Parent-child relationships will be identified in the data load file pursuant to Paragraph A.15 below.

## Attachment A

A.7. <u>Dynamic Fields</u>. Files containing dynamic fields such as file names, dates and times will be produced showing the field code (*e.g.*, "[FILENAME]" or "[AUTODATE]"), rather than the values for such fields existing at the time the file is processed.

A.8. <u>English Language</u>. To the extent any data exists in more than one language, the data will be produced in English, if available. If no English version of a file is available, the Producing Party shall not have an obligation to produce an English translation of the data.

A.9. <u>Embedded Objects</u>. Some Microsoft Office and *.rtf files may contain embedded objects. Such objects typically are the following file types: *.pdf and Microsoft Excel, Word, PowerPoint, Project, Outlook and Access. Subject to claims of privilege and immunity, as applicable, objects with those identified file types shall be extracted as separate files and shall be produced as attachments to the file in which they are embedded. Note, however, that elements of email signature blocks and other embedded objects fully visible on the face of an email do not require extraction.

A.10. <u>Compressed Files</u>. Compressed file types (*i.e.*, *.cab, *.gz, *.tar. *.z, *.zip) shall be decompressed in a reiterative manner to ensure that a zip within a zip is decompressed into the lowest possible compression resulting in individual files.

A.11. <u>Encrypted Files</u>. The Producing Party will take reasonable steps to unencrypt any discoverable ESI that exists in encrypted format (*e.g.*, because password-protected).

A.12. <u>Scanned Hardcopy Documents</u>.

    (a) In scanning hardcopy documents, multiple distinct documents will not be merged into a single record, and single documents will not be split into multiple records (*i.e.*, hardcopy documents will be logically unitized).

    (b) OCR text for scanned images of hardcopy documents will be performed on a document level and provided in document-level *.txt files named to match the Bates number of the first page of the document to which the OCR text corresponds. OCR text will not be delivered in the data load file or any other delimited text file.

    (c) In an organized compilation of separate hardcopy documents (*e.g.*, a binder containing several separate documents behind numbered tabs), each document (*e.g.*, the document behind each tab) will be scanned separately, but the relationship among the documents will be identified in the data load file pursuant to Paragraph A.15 below.

A.13. <u>OCR Text</u>. OCR text shall be generated by applying optical character recognition to the image of the document. The Parties will endeavor to generate accurate OCR and will use quality OCR processes and technology. Not all documents lend themselves to the generation of accurate OCR.

## Attachment A

A.14.  Bates Numbering.

(a) A document's Bates number shall be a unique, consistently formatted identifier that will (i) be consistent across the production; (ii) contain no special characters; and (iii) be numerically sequential within a given file.

(b) Bates numbers shall be a combination of an alpha prefix along with an 8-digit number (*e.g.*, ABC00000001). The number of digits in the numeric portion of the Bates number format will not change in subsequent productions.

(c) The Producing Party shall take reasonable steps to ensure that attachments to documents or electronic files are assigned Bates numbers that directly follow the Bates numbers on the documents or files to which they were attached.

(d) If a Bates number or set of Bates numbers is skipped, the skipped number or set of numbers will be noted.

A.15.  Data and Image Load Files.

(a) Load Files Required. Unless otherwise agreed, each production will include a data load file in Concordance (*.dat) format and an image load file in Opticon (*.opt) format.

   (b) Load File Formats.

   (i) Load file names will contain the volume name of the production media. Additional descriptive information may be provided after the volume name. For example, both ABC001.dat or ABC001_metadata.dat would be acceptable.

   (ii) Unless other delimiters are specified, any fielded data provided in a load file will use Concordance default delimiters. Semicolons (;) will be used as multi-entry separators.

   (iii) Any delimited text file containing fielded data will contain in the first line a list of the fields provided in the order in which they are organized in the file.

   (c) Fields to be Included in Data Load File. For all documents or electronic files produced, the following metadata fields for each document or electronic file, if available at the time of collection and processing and unless such metadata fields are protected from disclosure by attorney-client privilege or work-product immunity or otherwise prohibited from disclosure by law or regulation, will be provided in the data load file pursuant to Paragraph A.15.a, except to the extent that a document or electronic file has been produced with redactions. As used below, the term "Scanned Docs" refers to documents that are in hardcopy form at the time of collection and have been scanned into *.tif images, and the terms "Email" and "Edocs" refer to files that are in electronic form at the time of their collection.

**Attachment A**

| | Field | Summation Field (Florida) | Definition | Doc Type |
|---|---|---|---|---|
| 1 | SOURCE | SOURCE | Name of party producing the document | All |
| 2 | CUSTODIAN | CUSTODIAN | Name of person or non-human data source from where documents/files are produced. **Where redundant names occur, individuals should be distinguished by an initial which is kept constant throughout productions (e.g., Smith, John A. and Smith, John B. Where data is collected from an archive, the archive will be listed as custodian. | All |
| 3 | CUSTODIANAPPENDMULTI | CUSTODIANAPPENDMULTI | Name of Takeda person or non-human data source from where duplicate documents/files were suppressed. **Where redundant names occur, individuals should be distinguished by an initial which is kept constant throughout productions (e.g., Smith, John A. and Smith, John B. Where data is collected from an archive, the archive will be listed as custodian. | All |
| 4 | CUSTODIAN ID | CUSTODIAN ID | Each CUSTODIAN from #2 or 3 above will be assigned a unique numeric identifier that will be maintained throughout productions. Where data is collected from an archive, the archive will be listed as custodian. | All |

# Attachment A

| | Field | Summation Field (Florida) | Definition | Doc Type |
|---|---|---|---|---|
| 5 | BEGBATES | BEGDOC# | Beginning Bates Number (production number) | All |
| 6 | ENDBATES | ENDDOC# | End Bates Number (production number) | All |
| 7 | PGCOUNT | PGCOUNT | Number of pages in the document | All |
| 8 | FILESIZE | FILESIZE | File Size | All |
| 9 | APPLICAT | APPLICAT | Commonly associated application for the specified file type. | All |
| 10 | FILEPATH | FILEPATH (for Edocs) | File source path for electronically collected documents other than emails, which includes location, file name, and file source extension. | Edocs |
| 11 | RELATIVE PATH APPEND | RELATIVE PATH APPEND (for Edocs) | File source path for duplicate electronically collected documents other than emails, which includes location, file name, and file source extension. | Edocs |
| 12 | NATIVEFILELINK | DOCLINK | For documents provided in native format only | All |
| 13 | TEXTPATH | LOGFILE or FULLTEXT | File path for OCR or Extracted Text files | All |
| 14 | MSGID | MSGID | Value extracted from parent message during processing | Email |
| 15 | FROM | FROM | Sender | Email |
| 16 | TO | TO | Recipient | Email |
| 17 | cc | cc | Additional Recipients | Email |
| 18 | BCC | BCC | Blind Additional Recipients | Email |
| 19 | SUBJECT | SUBJECT | Subject line of email | Email |
| 20 | PARENTBATES | PARENTID | BeginBates number for the parent email of a family (will not be populated for documents that are not part of a family) | Email |

A-5

**Attachment A**

| | Field | Summation Field (Florida) | Definition | Doc Type |
|---|---|---|---|---|
| 21 | ATTACHBATES | ATTACHID | Bates number from the first page of each attachment | Email |
| 22 | BEGATTACH | (will be provided from ATTRANGE) | First Bates number of family range (i.e. Bates number of the first page of the parent email) | Email |
| 23 | ENDATTACH | (will be provided from ATTRANGE) | Last Bates number of family range (i.e. Bates number of the last page of the last attachment) | Email |
| 24 | ATTACHCOUNT | ATTACHMENT COUNT | Number of attachments to an email | Email |
| 25 | ATTACHNAME | ATTACHMENT LIST | Name of each individual attachment | Email |
| 26 | DATESENT (mm/dd/yyyy hh:mm:ss AM) | DATESENT | Date Sent | Email |
| 27 | DATERCVD (mm/dd/yyyy hh:mm:ss AM) | DATERCVD | Date Received | Email |
| 28 | EMAILDATSORT (mm/dd/yyyy hh:mm:ss AM) | DATESENT | Sent Date of the parent email (physically top email in a chain, I.e. immediate/direct parent email) | Email |
| 29 | Email Outlook Type | Email Outlook Type | Type of Outlook item, e.g. email, calendar item, contact, note, task | Email |
| 30 | HASHVALUE | MD5HASH | MD5 Hash Value | All |
| 31 | TITLE | DOCTITLE | Title provided by user within the document | Edocs |
| 32 | AUTHOR | AUTHOR | Creator of a document | Edocs |
| 33 | DATECRTD | DATECRTD | Creation Date | Edocs |
| 34 | MODIFIED BY | LAST EDITED BY | Person who has modified a document | Edocs |
| 35 | LASTMODD (mm/dd/yyyy | LASTMODD (mm/dd/yyyy hh:mm:ss | Last Modified Date | Edocs |

A-6

**Attachment A**

| | Field | Summation Field (Florida) | Definition | Doc Type |
|---|---|---|---|---|
| 36 | DocumentType | DocumentType | Descriptor for the type of document: "**E-document**" for electronic documents not attached to emails; "**Emails**" for all emails; "**E-attachments**" for files that were attachments to emails; and "**Physicals**" for hard copy physical documents that have been scanned and converted to an electronic image. | All |
| 37 | Importance | Importance | High Importance - indicates Priority Email message. | Email |
| 38 | Redacted | Redacted | Descriptor for documents that have been redacted. "Yes" for redacted documents; "No" for unredacted documents. | All |
| 39 | ProdVol | ProdVol | Name of media that data was produced on. Wave 00 I - Hard Drive | All |
| 40 | Confidentiality | Confidentiality | Indicates if the document has been designated as "Confidential" pursuant to any applicable Protective Order. "Yes" for Confidential documents; "**No**" for documents that are not so designated. | All |
| 41 | Email folder | Email folder | Folder in which non-archive collected email is stored within the custodians mailbox, such as "inbox", "sent", "deleted", "draft", or any custom folder. | Email |

A-7

**Attachment A**

A.16.  <u>Files Produced in Native Format</u>. Any electronic file produced in native file format shall be given a file name consisting of a unique Bates number. For each native file produced, the production will include a *.tif image slipsheet indicating the Bates number of the native file and stating "File Provided Natively." To the extent that it is available, the original file text shall be provided in a file-level multi-page UTF-8 text file with a text path provided in the *.dat file. Otherwise the text contained on the slipsheet shall be provided in the *.txt file with the text path provided in the *.dat file.

A.17.  <u>Production Media</u>. Unless otherwise agreed, documents and ESI will be produced on optical media (CD/DVD), external hard drive, secure FTP site or similar electronic format. Such media will have an alphanumeric volume name.  If a hard drive contains multiple volumes, each volume will be contained in an appropriately named folder at the root of the drive. Volumes will be numbered consecutively (*e.g.*, ABC001, ABC002, etc.). Deliverable media will be labeled with the name of this action, the identity of the Producing Party, the volume name, the production range(s) and the date of delivery.  If the production range will not fit on the production media label, that information will be included in the cover letter accompanying the production.

A.18.  <u>Encryption of Production Media</u>. To maximize the security of information in transit, any media on which documents or electronic files are produced will be encrypted by the Producing Party. The Producing Party shall transmit the encryption key or password to the Receiving Party, under separate cover, contemporaneously with sending the encrypted media.